Bell, J.
Only four witnesses testified at the hearing in the Juvenile Court, Mr. and Mrs. Hazlett and Mr. and Mrs. Mays. *174 From the record of their testimony the following facts are established.
Carl Kronjaeger and Delores Mays (then Delores Reece) were never married. They lived together for several years, part of the time in an apartment in Zanesville belonging to Mr. Hazlett. They had two children, Donna J ean and Karla. Sometime in August 1954, Carl, Delores and the children moved to Chicago to be nearer Carl’s work. Shortly thereafter, because Carl would not get a divorce, marry Delores and provide a permanent home, Delores informed Carl she intended to leave him. Late in September, after Donna Jean had been in school in Chicago for approximately two weeks, Carl telephoned his sister, Mrs. Hazlett. Mrs. Hazlett’s testimony concerning this telephone call was as follows:
“A. Well my brother was crying when he called. I will try to repeat what I can. He said Evelyn will you take Donna Jean? I ask what was wrong? But he said I can’t tell you, but I want you to take Donna Jean. I said you mean you and Dee will give up that child and he said well I did.”
Mrs. Hazlett testified later:
“Q. Now in your mind there has been a matter of adoption of Donna Jean? A. Not before she came to me.
“Q. Well then at the time you received her you were looking upon it as an adoption? A. Yes, that is what my brother said would happen.
“Q. And you have never asked Delores about it? A. No.
“Q. When did you learn that Delores wanted Donna Jean back? A. Well, Carl called me approximately two months ago and he said he guessed Dee wanted Donna Jean back. That was the first time he said anything about her wanting her back.”
Mr. Hazlett, with regard to the understanding of the parties on this matter, testified as follows:
“ Q. Mr. Hazlett, now at the time Donna came down here by plane from Chicago, arrangements were made with you or Mrs. Hazlett? A. Yes, we were informed she was coming and had to go to Columbus to get her. When she came down here the opinion we had and the information we received was that we were to keep her and send her to school and after school was out adopt her if we wanted to.
*175 “Q. Now from whom did you get that information? A. From the father and the mother knew we did.
“Q. Now did they mention anything about adoption? A. No.
“Q. Now then you have nothing but Carl Kronjaeger’s word the child was to be adopted by you? Well with Carl Kronjaeger is that not right? A. I can’t remember or not whether anything was said by the mother or not.”
The only other testimony in the record on this subject is that of Delores, the pertinent portions of which are as follows:
“Q. Now at any time did you tell Mr. and Mrs. Hazlett that they could have Donna Jean for adoption? A. No, I did not.
t i * * *
“Q. What was your reason for permitting Carl to send Donna Jean to Zanesville? A. So she could go to school without being moved from one place to another.
# #
“Q. Now one final question what was your understanding with Mr. Kronjaeger at the time Donna was sent down here? A. That she would be returned to me as soon as school was out. ’ ’
Mr. Hazlett testified that he and his wife had provided care for Donna Jean during the time she had been living in their home. On cross-examination, he testified, in part, as follows:
“Q. At the time Donna Jean came down here at Carl’s request did Carl tell you he would pay any support for her? A. Said he would help, which has been very little.
“Q. What has he done in that line? A. The only thing he has done was in gifts, there has been nothing in cash. ’ ’
On the subject of support, Mrs. Hazlett testified that Delores had contributed nothing to the support of the child. When asked if she had ever asked Delores for support, Mrs. Hazlett answered: “She has sent gifts, $5 for a gift.”
The only other evidence on the question of support is that of Delores and, in its entirety, is as follows:
“Q. Did you say Mr. Kronjaeger stated he would give them $10 a week for Donna Jean and you believe he did that? A. Yes.”
*176 During the months between September 1954 and May 1955, Delores, according to the testimony of Mrs. Hazlett, wrote the child “not over four or five” letters and sent her holiday gifts. On May 11, 1955, Delores wrote to Mrs. Hazlett inquiring whether school was out and stating that she was expecting the child back. Mrs. Hazlett’s reply was a noncommittal one telling about her plans for Donna Jean for the summer. Pour days later the complaint on which this action is based was filed.
On the basis of this evidence, has the child been neglected and, if so, by whom?
It is conceded by all concerned that Carl Kron jaeger, although admittedly the father of the child, was never married to the mother and, therefore, in the absence of a judicial determination of his paternity, is not liable for the child’s support. Yet it may be observed that the complaint charges him with neglect. Both the complaint and the temporary order of commitment, as quoted herein, recite :
“ * * * appears to be a neglected child in that the father, did permit the child to he given to Mr. and Mrs. Dean L. Hazlett, on or about the 26th day of September 1954, with the consent of the mother, and since then has failed, neglected to see the child and has written only three letters to said child.’’ (Emphasis added.)
However, since both courts below treated the complaint as one charging neglect by the mother, it will be similarly considered here.
This court had occasion to review the definition of a “neglected child” as set out in Section 2151.03, Revised Code, in In re Masters, 165 Ohio St., 503, 137 N. E. (2d), 752. Although, in the present case, it is impossible to tell either from the opinion or the entry of the trial court in what respect it found this child to be neglected, it is apparent from the record that such neglect could only have been by reason of (a) abandonment, (b) fault or habits of the parent, or (e) neglect or refusal to provide.
There is no evidence here that the mother intended to leave her child willfully, and with an intention of causing perpetual separation. In re Masters, supra. The evidence is to the contrary in that it was understood by the responsible parties con *177 cerned that Donna Jean was to remain with the Hazletts only during the school year at the end of which time she was to be returned to her mother.
There is likewise no evidence in this record that, at the time of the hearing, the mother of this child was engaging in any conduct ill befitting the mother of a minor child. She is rather to be commended for breaking off an illicit connection in favor of a man who would make a home for her and for her children. The evidence is uncontroverted that, at the time of the hearing, the mother of the child was legally married to a man who owned a good house and had the ability and willingness to support his wife and her children. Any fault or habit of a parent sufficient to constitute a lack of proper parental care must exist at the time of the hearing of a charge of such neglect.
This court in In re Masters, supra, adopted definitions of “neglect” and “refusal” from Webster’s New International Dictionary. We adhere to those definitions here. There is no evidence in this ease of a willful or indifferent disregard of duty on the part of this mother or of her denial of anything demanded of her. Had the Hazletts informed this mother of the failure of Carl Kronjaeger to make the agreed payments for the child’s support, she would have had the opportunity to make them herself or to take the child with her immediately.
The situation presented by the failure to so inform the mother makes the words of Judge Putnam in his dissenting opinion in the Court of Appeals appropriate:
“Here, again, we have a case where as soon as the parent insisted in exercising her proper parental right to have her own child returned to her, which had never been legally abandoned, recourse was had to Section 2151.03, Eevised Code, ‘the neglected child statute,’ as a vehicle whereby to set up a situation for an adoption by a childless couple of a child which they desired and to deprive a parent of its natural right to its offspring. It must be remembered in this case likewise that no effort was made to have this child declared a neglected child until after the parent insisted that the child be returned to it. This fact speaks louder than words that the motive was not because the child was neglected but rather that these people simply wanted this child. I cannot conceive that the Legislature ever had such a *178 situation in mind when Sections 2151.01 to 2151.54, Revised Code, were enacted. ’ ’
It follows that the judgment of the court below must be, and it hereby is, reversed, and final judgment is rendered in favor of Delores Mays.

Judgment reversed.

WeygaNdt, C. J., Zimmermast, Stewart, Matthias and Herbert, JJ., concur.
WeygaNdt, C. J., concurs for the further controlling reason that the complaint fails to charge the mother with neglect of her child.